UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
)  **JUDGE RICHARD L. SPEER**
Todd and Jill Kaminski )
)  Case No. 07-35231
Debtor(s) )
)

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this Case for abuse pursuant to 11 U.S.C. § 707(b). (Doc. No. 24). The Debtors filed a response, contra, after which time a Hearing was held on the matter. (Doc. No. 31). At the conclusion of the Hearing, the Court, finding that insufficient evidence had been presented regarding the Debtors' financial condition, ordered the Debtors to submit updated budgetary figures. (Doc. No. 38). This information has now been filed, together with supplemental briefs filed by both the Debtors and the United States Trustee. Based upon a review of these materials, together with all of the evidence presented in this case, the Court, for the reasons now explained, finds that the Motion of the United States Trustee to be well taken.

## FACTS

On December 1, 2007, the Debtors, Todd and Jill Kaminski (hereinafter the "Debtors"), filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. At this time, the Debtors were residence of Lucas County, Ohio. The Debtors have two children, ages six and 10. In their bankruptcy petition, the Debtors disclosed assets worth $474,943.34.

The Debtors' principal assets are: (1) their residence, valued at $245,000,00; and (2) a second parcel of real property, valued at $130,000.00. Other assets of significant value include two 401(k)

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

accounts, worth $31,463.34, jewelry worth $1,300.00, and three automobiles: (1) a 2003 Chevrolet Trailblazer, with a value of $14,000.00; (2) a 2006 Ford 500, valued at $16,370.00; and (3) a low milage, 2007 Ford F-150, having, as taken from the Debtors' bankruptcy schedules, an assigned worth of $36,000.00.

With the exception of their 401(k) accounts, all the above items of property were encumbered by security interests whose value was either at, near or exceeded the value of the collateral. At the time their petition was filed, the Debtors set forth that they intended to surrender two items of secured property: the second parcel of real property valued at $130,000.00 and the 2006 Ford. For the remaining secured property, the Debtors set forth an intent to reaffirm on the underlying obligations.

In total, the Debtors have secured debt totaling $429,282.19, and unsecured debt totaling $52,940.55. The Debtors' unsecured debt includes a student-loan obligation, having an outstanding balance of $22,387.03. The remaining unsecured debt consists almost entirely of credit-card transactions.

The Debtor, Mr. Kaminski, is employed as a carpenter and has been with the same employer for 17 years. The Debtor, Mrs. Kaminski, has been employed for the past 4 ½ years as a secretary with the federal government. From their employment, the Debtors show in their amended bankruptcy schedules monthly earnings of $8,857.28, amounting to an annual salary of $106,287.36. In addition to this income, Mrs. Kaminski is entitled to receive approximately $300.00 per month for child support, although monthly payments are not always forthcoming.

Based upon direct deductions from their salary, including the subtraction of $99.76 for the repayment of a 401(k) loan, the Debtors' amended schedules show a net monthly salary of $6,058.35, inclusive of the payment Mrs. Kaminksi is entitled to receive for child support. Against

Page 2

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

this income, the Debtors claimed in their amended schedules $6,297.19 in necessary, monthly expenses, thus leaving the Debtors' household budget with a deficiency of $238.84 per month. Although not a complete list, the Debtors listed the following itemized expenses:

| | |
|---|---|
| Mortgage Payment, including taxes and insurance | $1,856.16 |
| Cell Phone | $ 90.00 |
| Cable/Internet/Telephone | $ 140.00 |
| School Loan | $ 300.00 |
| Property Tax (2nd Property) | $ 60.00 |
| Support paid to others | $ 502.70 |
| Auto Payments | $1,030.00 |
| Transportation | $ 350.00 |
| Daycare | $ 302.33 |

## DISCUSSION

This matter is before the Court on the Motion of the UST to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

Page 3

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

The Motion of the United States Trustee (hereinafter the "UST") to Dismiss is brought pursuant to 11 U.S.C. § 707(b). Under the first paragraph of this provision the general rule is set forth that a case may be dismissed for abuse, with § 707(b)(1) providing, *inter alia*:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Section 707(b) then goes on to prescribe two alternative standards by which to assess the existence of abuse. First, in § 707(b)(2) it is provided that, under a 'means test' formula, abuse may be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) sets forth that, even if no presumption of abuse arises, a court may still dismiss a case based upon the particular circumstances of the case.

In its Motion to Dismiss, the UST originally cited to both § 707(b)(2) and § 707(b)(3). However, at the Hearing held on the matter, the UST withdrew that portion of its Motion related to the dismissal of the Debtor's case under § 707(b)(2), thereby limiting the issue to the applicability of § 707(b)(3). This provision provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Page 4

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

An often used indicator when assessing the propriety of dismissing a case pursuant to § 707(b)(3) is whether the debtor has an ability to repay their debts. *In re Krohn*, 886 F.2d 123, 126-27 (6th Cir. 1989). This case is no exception, with the UST taking the position that, notwithstanding their monthly budget, which shows a deficit, the Debtors, by making reasonable adjustments to their budget, have the ability to repay their creditors. (Doc. No. 40).

With the implementation of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, known as BAPCPA, the standard for dismissal under § 707(b) was made less stringent. Prior to 2005, § 707(b) had provided that, although a case could be dismissed for abuse, the abuse had to be "substantial." Under BAPCPA, the substantiality modifier no longer exists. In addition, the presumption which formerly existed in favor of allowing a case to proceed was eliminated by BAPCPA.

Based upon these changes, this Court has observed that persons, such as the Debtors, with a substantial salary (the Kaminski's annual salary is well over $100,000.00 per year) and stable employment (Mr. Kaminksi has been with the same employer for 17 years; Mrs. Kaminski has held the same job for over four years) "will be hard pressed to establish that they do not have the ability to pay some of their unsecured debt, such as through funding a Chapter 13 plan of reorganization." *In re Wadsworth*, 383 B.R. 330, 333-34 (Bankr. N.D.Ohio 2007). At the same time, § 707(b)(3) does not automatically preclude debtors with substantial financial means from obtaining relief under Chapter 7 of the Bankruptcy Code. Unlike the 'means test' of § 707(b)(2), which is inherently objective, an analysis under § 707(b)(3) is subjective, requiring that a court conduct a case-by-case examination of a debtor's financial situation and course of conduct. *In re Wilson*, 356 B.R. 114, 121 (Bankr. D.Del. 2006).

Under a subjective approach, the Court is not required to accept, at face value, the financial figures put forth by a debtor when assessing their ability to repay their debts. Rather, utilizing the

Page 5

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

'disposable income'[1] requirement for Chapter 13 plan confirmation as a guidepost – the term of which looks to the reasonable necessity of a debtor's expenditures – the Court may make downward adjustments in a debtor's expenses where necessary. Similarly, a court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007).

For its position that the Debtors have the ability to repay their creditors, the UST did not make any allegations that additional income should be imputed to the Debtors. Rather, the UST focused entirely on the excessiveness and/or impropriety of these four expenses claimed by the Debtors: (1) a monthly housing expense of $1,856.16; (2) a student-loan expenditure of $300.00 per month; (3) a monthly outlay of $99.76 for the repayment of a 401(k) loan; and (4) an increase in the Debtors' medical expenditures, from $50.00 per month, as the Debtors set forth when they filed for bankruptcy, to $316.00, as the Debtors claimed in their revised monthly budget. The permissibility of each of these expenses is now addressed in order.

In assessing a debtor's ability to pay, all debtors are entitled to expense against their income those costs associated with maintaining adequate shelter. *See, e.g.*, *In re Haar*, 373 B.R. 493, 500 (Bankr. N.D.Ohio 2007). Whether a debtor's shelter is adequate – as opposed to excessive, thereby constituting an impermissible expense – depends on the reasonableness of the expenditure. Although no bright-line rule exists, the demarcation between a reasonable and an excessive housing expense may include consideration of such factors as a debtor's family size, income level, location and any special needs of the debtor.

---

[1] The term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004).

Page 6

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

As support for its position that the Debtors' housing expenditures are excessive, the UST cited primarily to the monetary limitations utilized by the IRS when effectuating a compromise of a person's tax liability, and which are used in the 'means test' calculation of § 707(b)(2). Under these standards, the Debtors are entitled to allocate $841.00 per month[2] for their housing, as opposed to the $1,856.12 the Debtors now claim. According to the UST, it "is not saying that the debtors can never exceed the IRS allowances but when they are spending more than twice what is deemed to be necessary to secure housing in a geographical area, the costs should not be borne by creditors." (Doc. No. 40).

As a matter of purely statutory application, the IRS monetary limitations applicable to the 'means test' of § 707(b)(2), including the $841.00 ceiling on housing as cited by the UST, are not applicable in a § 707(b)(3) analysis. Still, the goal of the IRS housing allowance generally aligns itself with the Court's aim in a § 707(b)(3) analysis: to ensure that a debtor, while afforded with the means by which to obtain adequate shelter, is not devoting excessive financial resources toward their housing to the detriment of the debtor's creditors. As such, this Court has found that, "as a pole for guidance, the expense figures provided in the 'means test' can be helpful when determining the reasonableness of a debtor's expenses under § 707(b)(3)." *In re Gonzalez*, 378 B.R. at 175. As a practicable matter, therefore, when a debtor's housing allocation significantly exceeds the IRS allowance, a viable justification for the necessity and reasonableness of that housing expense should be offered.

---

[2]

As set forth in the following web page, this is figure is based upon the Debtors being residence of Lucas County on the date they filed their petition:

> http://www.usdoj.gov/ust/eo/bapcpa/20071015/bci_data/housing_charts/irs_housing_charts_OH.htm

Page 7

In re Todd and Jill Kaminski
Case No. 07-35231

Within this framework, the Debtors' allocation of $1,856.12 for housing appears impermissibly high given the lack of any special circumstances offered by the Debtors to warrant an expenditure more than twice the IRS allowance. In fact, the Debtors admitted so much, but explained that their housing budget "is excessively high due to poor terms, PMI, and high real estate taxes." (Doc. No. 44, at pg. 2). In addition, the Debtors, although not offering any evidence, such as photographs, stated to the Court that their home, which is worth approximately $245,000.00, is not "extravagant" but is rather "average." *Id.*

However, even accepting their statements at face value, the Debtors' explanation does not alter the Court's view as to excessiveness of their housing expense. To the contrary, a fair reading of the Debtors' position shows an internal weakness: In essence, what the Debtors are asking is that they be permitted to use the bankruptcy process so that they can continue to honor an admittedly bad bargain while presumably seeking to discharge other obligations of the same nature. Such an approach is not acceptable. Bankruptcy is meant to afford an honest debtor a fresh-start, whereby the debtor is freed from preexisting financial burdens, and is not meant to be used as a means by which a debtor can perpetuate bad financial decisions. *United States Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122, 123 (8th Cir. 1986).

Accordingly, for these reasons, it is the holding of this Court that, insofar as it concerns § 707(b)(3), the Debtors' monthly housing expense of $1,856.12 is excessive. As such, the Court, while not having sufficient evidence to articulate an exact number, finds that resources the Debtors are presently dedicating to their housing can be reallocated for the benefit of their unsecured creditors. As now explained, the same also applies to the next two categories of expenses against which the UST took issue: a student-loan expenditure of $300.00 per month; and a monthly outlay of $99.76 for the repayment of a 401(k) loan.

Page 8

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

First, in the context of a § 707(b)(3) action, this Court has not viewed favorably debtors who seek to allocate their financial resources to fully pay a student loan while not doing the same for their other unsecured creditors. *In re Reimer*, Ch. 7 Case No. 07-32787, 2008 WL 495537 (Bankr. N.D.Ohio 2008). The reason: it goes against the core principle of bankruptcy that similarly situated creditors are entitled to an equal distribution of estate assets. *In re CSC Industries, Inc.*, 232 F.3d 505, 508 (6th Cir. 2000). The Debtors' position, that payments on student-loan obligations are entitled to special treatment because, being nondischargeable debts, they are not voluntary has been rejected by the Court. In *In re Reimer*, it was explained:

> The fact, however, that an obligation to pay a debt will survive bankruptcy, does not, on that basis alone, mean that a debtor has the right to treat the claim differently. Otherwise, all nondischargeable debts would be entitled to favorable treatment, including those debts which arise from a debtor's wrongful conduct – *e.g.*, fraud, embezzlement and larceny. 11 U.S.C. § 523(a)(2)/(4). To be sure, in some instances a creditor holding a nondischargeable claim will also be entitled to receive favorable treatment for its claim. For example, tax debts are generally both nondischargeable and entitled to priority treatment. 11 U.S.C. § 507(a)(8); § 523(a)(1).
>
> Yet, the two matters – nondischargeability and the favorable treatment of a creditor's claim – are neither related nor dependent on the other. Instead, each is based upon its own statutory authority.

*Id.* at * 3. It should also be noted in this regard that the Debtors' statement – that student loans are "treated as a priority debt by this court and all other federal courts" – is simply not correct. Nowhere in 11 U.S.C. § 507, which sets forth priority claims in bankruptcy, are student loans referenced.

For the next category of expense, this Court, relying on Sixth Circuit precedent, has held that, absent unique circumstances, a debtor's ability to pay their debt cannot take into account deductions made for 401(k) loans and contributions. The reason: it would be unfair to allow a debtor to commit a part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend. *See, e.g., In re Gonzalez*, 378 B.R. 168, 174 (Bankr.

Page 9

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

N.D.Ohio 2007), *citing Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir.1995) and *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004). The Debtors' contention that their 401(k) is a secured debt, and thus entitled to favorable treatment, has been rejected. In *Eisen v. Thompson*, the District Court, Northern District of Ohio, applying § 707(b), held that a loan from a Chapter 7 debtor's retirement plan was not a "debt" for purposes of the Bankruptcy Code, yet alone a "secured debt." 370 B.R. 762, 768-69 (N.D.Ohio 2007).

The final category of expense against which the UST takes issue concerns the Debtors' upward revision of their medical expenditure from $50.00 per month, as claimed when they filed bankruptcy, to $316.00 per month, as later asserted by the Debtors when they submitted their revised financial figures. Similar to the issue of the Debtors' housing expense, the UST argues that, in the absence of corroborating evidence, this expense should be capped at $216.00, which represents the applicable IRS allowance as now incorporated into the 'means test' of § 707(b)(2).

As an overall matter, the Court agrees with the UST that medical expenses, especially when exceeding the IRS allowance, should be corroborated. Notwithstanding, the Debtors did introduce some evidence corroborating their medical expenditures. (Doc. No. 44, Ex. 1). Of particular importance, this evidence tends to show that (1) two family members have ongoing health issues, which require numerous visits to the doctor and extensive prescriptions, and (2) the Debtors' health insurance premiums, including co-pays, have recently increased. (Ex. C).

Yet, even allowing for an increase in the Debtors' necessary, monthly medical expenditures to $316.00 per month does not change those facts previously discussed: First, after disallowing both the Debtors' monthly 401(k) expenditure of $99.76 and their student-loan payment of $300.00 per month, the Debtors have an additional $400.00 per month to repay their creditors, an amount more than adequate to cover the $238.84 shortfall the Debtors now claim in their household budget. Second, the Debtors' current housing expenditures are appreciably excessive, thereby affording the

Page 10

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

Debtors the means by which to reallocate additional financial resources for the benefit of their unsecured creditors. These facts, together with the following concern voiced by the Court at the Hearing held in this matter, persuade this Court that the filing of the Debtors' bankruptcy was an abuse within the meaning of § 707(b)(3).

In their bankruptcy petition, the Debtors set forth an ownership interest in a 2007 Ford F-150 Truck. According to the information originally filed with the Court, this vehicle had a value of $36,000.00, against which there existed a secured claim of $40,569.93. And while not questioning their need to have a vehicle, the Court found the Debtors' purchase and intent to retain their Ford F-150 difficult to reconcile with the picture the Debtors attempted to present of two financially distressed persons unable to make any effort to repay their unsecured debts. This perception has not changed.

As an initial matter, it can be assumed that the Ford F-150, which only registered 1,280 miles at the commencement of their case, was purchased by the Debtors in the time period immediately preceding the filing of their bankruptcy petition. Such eve of bankruptcy purchases, however, are generally frowned upon, considering that a debtor will normally be aware of their fragile financial situation. *See In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989) (§ 707(b) analysis may include whether the debtor engaged in "eve of bankruptcy purchases."). For example, recently this Court found that abuse existed under § 707(b) when, approximately three months prior to filing bankruptcy, the debtors incurred almost $300,000.00 in secured debt for the purchase of a home and automobile. *In re O'Brien*, 373 B.R. 503, 507 (Bankr. N.D.Ohio 2007).

Of equal concern to the Court is the primary use to which the Ford F-150 is put – that being to transport Mrs. Kaminski to her job as a secretary. Otherwise, the vehicle's character as a truck serves no remunerative purpose. As such, the Debtors' purchase of the Ford F-150 seems an

**In re Todd and Jill Kaminski**
**Case No. 07-35231**

unnecessary extravagance. Not even accounting for expenses such as gas, which is now more than $3.00 per gallon, the Debtors pay more than $600.00 per month to service the debt on the vehicle.

In response to such concerns, the Debtors responded with a number of justifications for their purchase of the Ford F-150, including the poor condition of their previous vehicle and the fact that if they were to surrender the vehicle, a significant deficiency would arise. (Doc. No. 44). However, none of their explanations answered the fundamental question: in purchasing a vehicle just prior to their bankruptcy, why didn't the Debtors opt for a less expensive mode of transportation? Surely there were less expenses vehicles available that would have met the needs of the Debtors' household. *See In re Vianese*, 192 B.R. 61, 72 (Bankr. N.D.N.Y. 1996) (lease of vehicle found to be extravagant when there were other less expensive vehicles available to debtors). In this regard, it is established law in this judicial circuit that bankruptcy relief, while not requiring a debtor to live in poverty, may require a debtor to engage in "good, old-fashioned belt tightening." *In re Krohn*, 886 F.2d at 128. Accordingly, for these reasons, the Court finds that the Debtors, to the detriment of their unsecured creditors, are improperly allocating financial resources to finance their Ford F-150.

In conclusion, the Court finds that those expenditures the Debtors set forth for their home, their 401(k), their student-loan and their Ford F-150 are either impermissible or excessive for purposes of 11 U.S.C. § 707(b)(3). Furthermore, once adjustments are made to the Debtors' budget to account for these findings, sufficient resources become available so as to provide the Debtors with the ability to repay their creditors. Consequently, the Court holds that the filing of this case constituted an abuse for purposes of § 707(b)(1).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 12

In re Todd and Jill Kaminski
Case No. 07-35231

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, April 28, 2008, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: April 14, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 13

# CERTIFICATE OF SERVICE

Copies were mailed this 14th day of April, 2008, to the following parties:

Jill & Todd Kaminski
4117 Edge View Dr
Oregon, OH 43616

Edward Lee Schimmel
4303 Woodville Rd
Northwood, OH 43619

Amy M Blythe
24755 Chagrin Blvd, #200
Cleveland, OH 44122

Cynthia A Jeffrey
2450 Edison Blvd
Twinsburg, OH 44087

GREAT LAKES EDUCATIONAL LOAN SERVICES,INC.
Claims Filing Unit
PO Box 8973
Madison, WI 53708-8973

Beth Ann Schenz
323 W Lakeside Ave, #200
Cleveland, OH 44113

Douglas A Dymarkowski
4747 Holland-Sylvania Rd
Sylvania, OH 43560

Office of the U.S. Trustee
201 Superior Ave, E
#441
Cleveland, OH 44114


/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court